```
                   IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF PENNSYLVANIA
                                        )
EDITH BRANDON,                          )    CIVIL ACTION NO. 03-1963
                                        )    Magistrate Judge Caiazza
              Plaintiff,                )
                                        )
                                        )
         v.                             )
                                        )
KLINGENSMITH HEALTHCARE,                )
Inc.,                                   )
                                        )
              Defendant.                )
                                        )
                                        )
```

## MEMORANDUM OPINION

Edith Brandon ("Brandon") alleges that she suffered discrimination in violation of the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. § 12111, *et seq.,* when her employer, Klingensmith Healthcare, Inc. ("KHI"), failed to accommodate her fibromyalgia and chronic headaches, and terminated her employment because she was disabled. She makes identical supplemental claims pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955 *et seq.*[1] KHI's motion for summary judgment (Doc. 22) is pending. For the reasons explained below, the motion is granted.

### I. Background

KHI, a corporation located in Ford City, Pennsylvania, rents and sells medical equipment. In early 2002, Edith Brandon applied for a job as a reimbursement specialist at KHI. She alleges that

---

[1] The PHRA claim need not be discussed separately as "analysis of an ADA claim applies equally to a PHRA claim." Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 761 n.6 (3d Cir. 2004) (quoting Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999)).

during the job interview, she explained that she suffered from fibromyalgia, which made it difficult for her to stand for long periods of time. Brandon was hired effective February 18, 2002. Her core duties involved fielding and completing clerical work related to telephone calls from third-party payors, doctors, insurance companies, and others with billing and reimbursement questions.

During her first weeks at KHI, Brandon's fibromyalgia symptoms were largely controlled, although the disorder, aggravated by the stress of the new job, caused some interference with her concentration, thinking, and memory. She also experienced some pain and fatigue, but these did not impede her ability to perform her duties.

In April 2002 Brandon suffered "a kind of seizure" which caused her mind to go blank for about thirty minutes. (Brandon Dep. 56). "Her head was burning and her tongue felt like it was swelling and going numb." (KHI Stmt. of Undisputed Facts ¶ 16). After Brandon told her supervisor about this incident, she was placed on probation for thirty days so that KHI could determine whether her condition would have a detrimental impact on its business. During the month of probation, Brandon's fibromyalgia was more symptomatic, but she was able to function. At the conclusion of the probationary period, Brandon was told that she had performed satisfactorily, and that she would be permitted to retain her job. She then asked that her supervisor be patient and allow time for her adjusted medications to work. She also requested additional training to compensate for times when her

fibromyalgia symptoms interfered with her ability to understand and retain the information communicated during her orientation.[2]

The record does not establish that Brandon's work was affected by any of her impairments over the next ten months. She admitted that during the first four months of 2003, her medication was effective, and she was in remission, - essentially symptom-free. She received a raise in January.  In a self-evaluation completed in February, she acknowledged that although there had been some problems associated with her medication changes, her supervisors had been patient and helpful.

In March 2003, Brandon received a formal evaluation stating that the quality and accuracy of her work were unsatisfactory. Her work was monitored over the next month, and in the opinion of her supervisor, Brandon's work did not improve significantly.  On April 28, 2003, the supervisor met with Brandon and again placed her on probation for thirty days, this time in order to allow identification of ongoing errors in Brandon's work. Brandon alleges that this probation was not motivated by her work performance, but was imposed instead because of her disabilities. Shortly before her probation was to expire, Brandon notified her supervisor that she needed to visit a doctor because she was experiencing heavy bleeding and swelling. She saw a physician and was diagnosed with endometriosis. She did not tell her supervisors about this diagnosis.

---

[2]Brandon contends that when she requested patience, time, and remedial training, she was, in fact, asking that KHI accommodate her disabilities. She denies that she was ever offered extra training.

On May 16, Brandon was told that there were continuing problems with her work accuracy and output. She continued to work until May 21, when she underwent outpatient surgery for removal of an ovarian cyst. She does not remember telling her supervisors what necessitated the surgery. Some time before May 28, the day on which she planned to return to work, Brandon called her supervisor to say that although she would return to work as scheduled, she would thereafter need to take additional time off for medical reasons. Her supervisor requested verification from Brandon's doctor.

When Brandon did return to work on May 28th, the day that her probationary period expired, she was told that continuing problems with the quality of her work necessitated her termination.

## II. Standard of Review

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The mere existence of some evidence favoring the non-moving party will not defeat the motion.  There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby., 477 U.S. 242, 248 (1986). A motion for summary judgment will be granted where the materials in the record, if reduced to admissible evidence,

would be insufficient to satisfy the non-moving party's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## A. Elements of a Prima Facie Case Under the ADA

The ADA was enacted to prohibit an employer from discriminating "against a qualified individual with a disability because of the disability . . . with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). In order to establish a prima facie claim of discrimination under the Act, a plaintiff must demonstrate that: 1) she is disabled within the meaning of the ADA ; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir 1988).

In its motion for summary judgment, KHI argues, among other things, that Brandon has not established the first element of her prima facie case; she has failed to show that she is disabled. Because the court agrees that Brandon has not shown that she is entitled to the protection of the ADA, it need not reach any of the other issues raised in the motion for summary judgment.

In order to be considered disabled under the ADA, a plaintiff must show: "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). Brandon claims disability pursuant to § 12102 (2)(A), alleging that she is, in fact, disabled by fibromyalgia and chronic migraine headaches.[3] She alleges that these conditions, when active, limit her ability to engage in every major life activity. (Am. Compl. ¶ 9, ¶ 29) (P. Resp. to First Interrog. ¶ 3 ).

## B. The Record Evidence

For purposes of this motion, the court credits Brandon's claim that at all relevant times she suffered from the physical impairments alleged.[4]  Impairments alone, however, do not satisfy the ADA's definition of disability . Unless the record contains sufficient evidence to allow a reasonable juror to conclude that Brandon's impairments, considered individually or in combination, imposed a substantial limitation on at least one major life activity at the time of the alleged discrimination, Brandon has failed to establish her prima facie case, and her claims cannot survive KHI's motion for summary judgment.[5] Taylor v.

---

[3] Although her complaint identifies only fibromyalgia and migraine headaches as physical impairments, she now alleges endometriosis as well.

[4] Relevant regulations define "physical impairment" to mean "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine." 45 C.F.R. 84.3(j)(2)(I)(2001).

[5] Because the ADA does not include definitions of many of its integral terms, courts are guided by definitions adopted in regulations promulgated by the EEOC in the context of Title I of the

Phoenixville School Dist., 998 F. Supp. 561, 566 (E.D. Pa. 1998).

In evaluating the record evidence against the requirements of the ADA, courts are to consider: 1) the duration or expected duration of the impairment; 2) the nature and severity of the impairment; and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). "[D]etermining ... whether a person is disabled is an individualized inquiry, particular to the facts of each case." Sutton v. United Airlines, 527 U.S. 471, 483 (1999). "[This] individualized assessment . . . is [especially important] when the impairment is one [where] symptoms vary widely from person to person." Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 199(2002).

Brandon's allegations of impairment and consequent limitations on major life activities are detailed in her complaint and, primarily, in her answers to interrogatories. Asked to describe how she is limited, she states that her fibromyalgia causes impaired memory and concentration, fatigue,

---

Act. Deane v. Pocono Med. Ctr., 142 F.3d 138, 143 n.4 (3d Cir. 1998)(en banc). These regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.
    The record must also contain credible evidence that the major life activity was "substantially limited." 42 U.S.C. 12102(2)(A). An activity is "substantially limited" if the plaintiff is: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner, or duration under which [she] can perform a major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j)(1).

uncontrollable seizure-like episodes which render her unable to take care of herself, speak, walk, communicate, or work. She also alleges that she cannot walk steadily, climb stairs, hold objects, type, write, or speak clearly. (The format of the answer leaves some doubt as to whether these manifestations of her impairments occur generally, or only during the period of a seizure.) In addition, Brandon alleges that fibromyalgia causes her to suffer joint, muscle, and pelvic swelling, numbness, burning, and cramping, and stiffness if she sits too long. She is unable to read, write, or type with her head bent because she experiences pain and stiffness in her shoulders and neck. Typing and writing in general produce pain in her hands, wrists, and finger joints. She cannot lift objects weighing more than one pound without pain.  When the pain is worst, she is unable to cook, clean, dress, undress, or perform other simple tasks.  At those times, she depends on the help of her family.

The migraine headaches cause her thought processes to slow, impede her ability to learn new tasks, cause blurred vision, and interfere with her ability to concentrate. She is also very sensitive to loud noises.

Endometriosis is responsible for pelvic, abdominal, and back pain. She also experiences swelling and, about four days per month, is unable to walk or take care for herself. Her problems abated when she was medicated except for some difficulty sleeping and related fatigue. She also experiences cramping in her lower extremities. (Id. 47). Brandon also testified that when she was asked about her gait by those at work, she replied, "It's only

endometriosis." (Id. 156). She did not tell anyone about the condition, and "did not have time for it to affect [her] work . . ." ( Id. 142).

Distilled to its essence, the record evidence relating to whether Brandon's impairments significantly limited her ability to perform one or more major life activities consists of unsupported conclusory allegations. Brandon did not submit affidavits from family members, health care workers, friends, or others who assisted her with these activities, or from any one who witnessed her difficulties. The record does not contain records of regular medical treatment. Brandon has failed totally to document the on-going nature, severity, likely duration, and expected long term impact of her specific impairments.[6]

Where a plaintiff relies solely on her own statements to show that she has been substantially limited in a major life activity, the likelihood that she will be able to establish a disability within the meaning of the ADA is diminished. *See, e.g.*, Rhoads v. Bd. of Educ. of Mad River Local School Dist., 103 Fed. Appx. 888, 893 (6th Cir. 2003)(stating that plaintiff cannot establish disabling condition merely by providing self-serving conclusory statements that disability limits ability to perform major life activity); EEOC v. Sarah Lee Corp., 237 F.3d 349, 353

---

[6]Even had Brandon been able to establish that she suffered from a disability within the meaning of the ADA, her accommodation claim would fail.  The court cannot discern how Brandon's request for patience, time for her medications to work, and additional training could reasonably have been interpreted as a request for accommodation under the Act. Nor has Brandon cited authority for the proposition that such general language is sufficient to constitute a request for accommodation.

(4th Cir. 2001)(stating that evidence must show plaintiff limited in major life activity in manner or extent different from average person); Taylor v. West Penn Allegheny Gen. Hosp., No. 04-1564, 2005 U.S. Dist. 2005 WL 3113187 *5 (W.D. Pa. Nov.21,2005)(finding that failure to cite anything other than conclusory statement in affidavit regarding symptoms not sufficient to establish disability).

Although the court recognizes that there *are* ADA cases where a plaintiff's testimony, without more, has been found adequate to support a claim of disability under the ADA, those cases are distinguishable from this one.  In cases where a plaintiff's claim survives the absence of relevant expert or other explanatory evidence, the alleged impairment is generally uncomplicated, and its associated limitations are likely to fall within the ken of the average person. *See* Marinelli v. City of Erie, 216 F.3d 354, 360 (3d Cir. 2000)(holding that arm and neck pain sustained in car accident are within understanding of unsophisticated jury)[7]; Katz v. City Metal Co., 87 F.3d 26, 32(1st Cir. 1996) (observing that long term impact of some impairments, such as missing limbs, is obvious to jury without expert evidence).

Brandon's impairments and their alleged associated limitations do not fall within an untrained juror's general

---

[7]A jury, knowing the circumstances surrounding a car accident and hearing the plaintiff's account of the pain suffered as a result of injuries sustained in that accident, is, in general, better equipped to assess and relate to that pain than it is in a case where the alleged pain results from a more arcane medical condition such as fibromyalgia.

experience or understanding. Fibromyalgia is a musculoskeletal disorder that is not well understood. It is similar to chronic fatigue syndrome in that its cause is unknown and its symptoms are almost entirely subjective. McPhaul v. Board of Comm'rs of Madison County, 226 F.3d 558, 562 (7th Cir. 2000). Endometriosis, too, varies widely in its severity, and is not so commonplace that a jury could be expected to evaluate the extent of its impact on Brandon's life based upon its own analysis of her testimony.[8] Although relevant medical evidence drafted in light of the requirements of the ADA is not required in every case,[9]

---

[8] While the court expects that migraine headaches are generally familiar to those outside of the medical profession, Brandon's testimony with respect to this impairment is not consistent. In one part of her deposition, she claims to remember having had two "bad" headaches over a period of two years.(Brandon Dep. 138) In another part of her testimony, she describes many more flare ups.(Id., 139). In any event, Brandon testified that she was able to continue to work when she suffered one of these headaches, but she needed to work more slowly. In short, there is nothing in the record which would allow a jury to find that migraine headaches imposed a substantial limitation on any major life activity.

[9] In Marinelli, 216 F.3d at 354, the Court of Appeals for the Third Circuit held that the need for medical evidence in an ADA case varies from case to case. In reaching this conclusion, the Court relied on the decision of the Court of Appeals for the First Circuit in Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996)(holding medical testimony not necessary to establish disability where long-term impairment is obvious, allowing jury to determine disability based on plaintiff's testimony). Extrapolating from language in Katz, the Court of Appeals in Marinelli articulated the following guideline:

> [T]he necessity [for] medical testimony turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge. Building upon this notion, other courts have held similarly and have added that a lack of medical testimony should be a factor cutting against a plaintiff's claim of disability.

216 F.3d at 361. The Court in Marinelli characterized this approach as "certainly that which most comports with the terms of the ADA and

this is one where evidence supplementing Brandon's testimony was critical to the pursuit of her claim.[10] In light of the ADA's stringent requirements for establishing a disability, the record evidence as it stands is insufficient to defeat KHI's motion for summary judgment.  Although the court sympathizes with Brandon's physical and work-related difficulties, it cannot alter the clear requirements of the law in response to that sympathy.

### III. Conclusion

Because Brandon has failed to make an adequate showing that her impairments, alone or in combination, caused her to be substantially limited in any major life activity, she has failed to establish that she was disabled within the meaning of the ADA.

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** the Motion for Summary Judgment filed by KHI (Doc. 22 ) is **GRANTED.**

---

with notions of common sense." Id., at n.2.

[10] Following the close of discovery, Brandon submitted one unsworn letter and one unsworn statement prepared by two of her treating physicians. Neither of these reports defines or explains anything about the nature of Brandon's impairments, and neither addresses the specific limitations imposed upon Brandon. Dr. Tolman does not mention limitations at all, and Dr. Garrott's only reference is to "life limiting heavy and painful menstruation." The doctors, too, say nothing about the severity of Brandon's problems in particular, including  whether her conditions are permanent or how long they can be expected to last. These reports are little more than a list of diagnoses which is of limited help to Brandon in opposing KHI's motion for summary judgment.

SO ORDERED this 13th day of December, 2005.


<u>S/ Francis X. Caiazza</u>
Francis X. Caiazza
U. S. Magistrate Judge


cc:
Neal A. Sanders, Esq.
LAW OFFICES OF NEAL A. SANDERS
1924 North Main Street Ext.
Butler, Pennsylvania  16001

Charles H. Saul, Esq.
1500 Grant Building
310 Grant Street,
Pittsburgh, PA  15219